J. W. STALEY, Respondent, v. FRANK D. TURNER, Appellant.

St. Louis Court of Appeals, March 9, 1886.

1. MALICIOUS PROSECUTION—VARIANCE.—In an action for damages for a malicious prosecution, the variance between an allegation that the warrant had been granted and issued by the prosecuting attorney and proof that it was issued by the clerk of the court upon information signed by the prosecuting attorney, is waived by a failure to bring it to the notice of the trial court.

2. ―――― PROBABLE CAUSE—WHAT CONSTITUTES.—The defendant's belief, based upon reasonable grounds, in the plaintiff's guilt at the time the prosecution was begun, constitutes probable cause which will exonerate the defendant in an action for damages for malicious prosecution.

3. ―――― ATTORNEY—LIABILITY of.—An attorney who advises, begins, and conducts, a criminal prosecution upon an understanding with his client that the charge against the accused is untrue, is liable for damages for a malicious prosecution.

4. ―――― INSTRUCTIONS.—An instruction, in such a case, which leaves out of view the defendant's belief in the plaintiff's guilt, is properly refused.

APPEAL from the St. Louis Circuit Court, AMOS M. THAYER, Judge.

*Affirmed.*

T. J. ROWE, for the appellant: "In order to charge an attorney upon this ground, it must not only appear that there was an agreement to bring an action which was, in fact, groundless, but that it was agreed to bring an action understood by both parties to be groundless, and brought as such." *Bicknell v. Dorion,* 16 Pick. (Mass.) 490. There must be an absence of any just demand, of which fact the defendants have knowledge, and it must be shown that they, applying the law for some

purpose of their own, and not for the purposes of their client, committed the injury complained of by the plaintiff. *Stockley v. Hornidge*, 8 Car. & P. 16; *Wheeler v. Nesbitt*, 24 How. (U. S.) 545; *Stansbury v. Fogle*, 37 Md. 369; *Gilbert v. Emmons*, 42 Ill. 143; Weeks on Attorneys, sect. 133. The instructions offered by the appellant were proper. See *Vansickle v. Brown*, 68 Mo. 627; *Sparling v. Conway* 75 Mo. 512; *Sharpe v. Johnston*, 59 Mo. 557; s. c., 76 Mo. 670.

WILLIAM J. DONLIN, for the appellant: The defendant's belief in the plaintiff's guilt, induced by facts and circumstances sufficient to raise a suspicion of guilt in the mind of a reasonably cautious person, it is a justification. *Angelo v. Faul*, 85 Ill. 108; *Collins v. Hayte*, 50 Ill. 353. "Anything which will create in the mind of a reasonable man the belief that a felony existed, and that the party charged was in any way concerned in it, is probable cause." *Braveboy v. Cockfield*, 2 McMullan, 270, 274; *Vansickle v. Brown*, 68 Mo. 635; *Sims v. McLendon*, 3 Strobhart, 557, 560. The action of a grand jury in finding a bill of indictment, or the commitment of the prisoner by the examining magistrate, is *prima facie* evidence of probable cause. *Brant v. Higgins*, 10 Mo. 728; *Graham v. Noble*, 13 Serg. & R. 233; *Bacon v. Towne*, 4 Cush. 217; *Sharpe v. Johnston*, 59 Mo. 557; *The State v. Railey*, 35 Mo. 168.

A. R. TAYLOR, of counsel for the appellant.

C. P. & J. D. JOHNSON, with whom is JOHN B. ROEDER, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This was an action for damages for the malicious prosecution of a criminal action. The plaintiff had a verdict and judgment, in the sum of one thousand dollars, and the defendant appeals. The case has been presented on the part of the appellant by able counsel, in

three separate written arguments.    These arguments direct our attention to the following objections:

I.    That there was a total failure to prove the case stated in the petition.    The petition recited in substance that the defendant caused a certain Lillie Wallace, *alias* Lillie O'Donnell, to charge, before the prosecuting attorney of the St. Louis court of criminal correction, that the plaintiff had feloniously made and forged a certain chattel mortgage, and that the defendant had thereby procured the prosecuting attorney to grant a warrant for the arrest of the plaintiff upon this charge; that the prosecuting attorney issued the said warrant; that the plaintiff was arrested under the same and was compelled to give bail, etc. ; and that thereafter, upon an examination of the charge, the grand jury ignored a bill of indictment for the same.    The evidence was to the substantial effect that the defendant and one Morris were partners in the practice of the law; that they were counsel for the woman Lillie Wallace, *alias* Lillie O'Donnell, in a certain controversy between her and the Staley House Furnishing Company, touching the goods described in the chattel mortgage above stated; that the Staley House Furnishing Company, claiming the goods under the chattel mortgage, had demanded possession of them; that thereafter the defendant had gone to the office of the plaintiff, exhibited to him the chattel mortgage in question, called his attention to the words therein, "S. W. Cor. Seventh and Clark avenue," which had been interlined therein by the plaintiff after the same had been signed and acknowledged by Lillie O'Donnell, and threatened the plaintiff with a criminal prosecution for forgery if the Staley House Furnishing Company made any attempt to take forcible possession of the goods ; that, within a week thereafter, the Staley House Furnishing Company brought an action of replevin for the goods ; that a criminal information, with the affidavit of the private prosecutor thereto, had been drawn up and filled out partly in the handwriting of

the defendant and partly in that of his partner, Morris; that, on the day after the action of replevin was brought, this information was presented by Morris to the prosecuting attorney of the court of criminal correction, who, upon the affidavit of Lillie O'Donnell being made thereto, signed the same ; that, upon this information, the clerk of the court of criminal correction issued a warrant for the arrest of the plaintiff, charging him with the crime of forgery ; that he was arrested under this warrant ; that the prosecuting attorney authorized the defendant and Morris to appear in his stead as representing the state at the preliminary examination; that the plaintiff underwent a preliminary examination on the charge before the court of criminal correction, the defendant and Morris appearing for the state ; that the plaintiff was, by the court of criminal correction, bound over to appear at the next term of the criminal court in the sum of one thousand dollars, and that the grand jury of the criminal court subsequently ignored a bill of indictment charging against him the offence stated.

The fatal variance between the allegations and evidence is supposed to lie in the fact that the petition states that the warrant of arrest was issued by the prosecuting attorney of the court of criminal correction, whereas it was, in fact, issued by the clerk of that court. From this it is argued that the plaintiff states one case and endeavors to prove another ; that the case which he states is no case of malicious prosecution at all, but merely a case of assault and battery and false imprisonment, or of false and malicious arrest; that we must judicially know that the prosecuting attorney of the court of criminal correction has no authority to issue a warrant for the arrest of any one; that, if he did so issue a warrant, it was void, and the officer making the arrest under it was merely a trespasser ; and that, under such a state of the case, the action would be for a false arrest against the prosecuting attorney issuing

the void warrant, or the officer making the arrest under it, or both.

We are of opinion that the point is not well taken. We regard it as a mere question of variance between the allegation and the proof. The substantial fact charged was that the warrant of arrest had issued upon a charge of forgery ; that the plaintiff had been arrested thereunder, and that the prosecution had failed by reason of the fact that the grand jury had subsequently ignored the bill. The fact that the officer issuing the warrant was mis-described, was, in our opinion, a mere case of variance under the statute between the allegation and the proof, to which the attention of the court should have been directed at the trial, and, this not having been done, the question can not be raised now, for the first time, on appeal.

II.    The next substantial point made in behalf of the appellant is, that upon the law and the evidence there was no case against him to go to the jury, and that the court ought to have directed the jury, as requested by him, that the plaintiff could not recover.    After an attentive examination of the record, we are satisfied that this point is not well taken.    In addition to the facts above stated, the evidence tended to show that the woman, Lillie O'Donnell, was the keeper of a house of prostitution ; that there was a mortgage upon some furniture belonging to her, held by one Evans ; that she bought of the plaintiff an additional quantity of furniture upon an agreement that the plaintiff should take up the Evans mortgage, and that she should give a new mortgage covering the furniture mentioned in the Evans mortgage and the furniture now sold to her, to secure certain notes therein named ; that the furniture which the plaintiff sold to her was to be delivered at two different houses which she kept, one on the corner of Sixth and Elm streets, and the other on the corner of Seventh street and Clark avenue ; that, when the mortgage was drawn up and acknowledged by her before the notary, she could

not recall the number of the house at the corner of Seventh and Clark avenue, and that accordingly a blank space was left for the insertion of this number, with the understanding that it should be inserted as soon as she should return and report it to the plaintiff; that the plaintiff, desiring to protect his rights, sent the mortgage immediately to the recorder's office to be put upon record, without waiting for this blank space to be filled; that, after the mortgage had been recorded, he procured it from the recorder's office, and on the following day, the woman O'Donnell reported to him the description of the house on the corner of Seventh and Clark avenue, and he entered it according to her description in the blank space which had been left for that purpose; and that he sent the mortgage back to be again recorded, without having another acknowledgement taken.   The furniture covered by the mortgage was described, and no change, whatever, was made in that.   Subsequently, from time to time, Mrs. O'Donnell paid many of the notes secured by the mortgage, and never made any suggestion or complaint concerning the alteration of the mortgage, nor was any heard of by the plaintiff until Mrs. O'Donnell had made default in the payment of the remaining notes, and the Staley House Furnishing Company, which had become the proprietor of the mortgage and the notes, pressed her for payment, and threatened to take possession in case payment should not be made.   She then employed Turner and Morris as her counsel in the matter, and, under Turner's advice, she made a real or pretended sale of the property situated in the house at No. 608 Clark avenue, to a woman named Moss, one of the inmates of the house.   There was also evidence tending to show that on the day that he went to the office of the Staley House Furnishing Company, and there threatened the plaintiff with a criminal prosecution and the penitentiary if the Staley House Furnishing Company should take possession of the goods, the latter immediately placed the matter in the hands of their attorney, Mr.

Roeder; that Mr. Roeder had one or two interviews with the defendant, at the first of which the defendant said that he thought that the mortgage was a forgery, and that Mr. Staley had better not attempt to seize the property under it, because, if he did, he (Turner) would have him locked up; that Mr. Roeder called the attention of the defendant to the manner in which the instrument had been drawn, and to the fact of the blank space having been left for the purpose of inserting the description of the house on the corner of Seventh and Clark avenue, and that, in order to leave this space, the preceding writing had been crowded. It also appears that the plaintiff informed Mr. Turner, at the time when the latter threatened the plaintiff with a criminal prosecution, that he had made the alteration with the knowledge and consent of Mrs. O'Donnell. This evidence, if true, negatived the conclusion that the defendant acted merely upon the information communicated to him by his client, and shows that he was fully apprised of all the facts. It tends to show that he chose to take the word of the keeper of a house of prostitution against that of a reputable citizen, charging the latter with forgery, in a case where there was no other evidence, that the alteration had been made with a corrupt intent or had been done otherwise than to carry out the real intent of the parties. It is true that evidence was given on behalf of the defendant tending to exonerate him; but it is needless to say that on a demurrer to the evidence the question is, not what the whole evidence did show, but what the evidence on the plaintiff's side of the issue tended to show. It is true that an action for a malicious prosecution against an attorney at law who represents the prosecutor does not always stand on the same footing as such an action against the prosecutor himself. If the attorney proceeds upon facts stated to him by his client, believing those facts to be true, and if those facts, if true, would constitute probable cause for instituting such a prosecution, then the attorney is exonerated. *Stockley v.*

*Hornidge*, 8 Car. & P. 16; *Wheeler v. Nesbitt*, 24 How. (U. S.) 545; *Stansbury v. Fogle*, 37 Md. 369; *Gilbert v. Emmons*, 42 Ill. 143. But if the attorney agree with his client to institute a prosecution which is groundless, and which is understood both by the attorney and by the client to be such, then the attorney is liable. *Bicknell v. Dorion*, 16 Pick. 490.

If an attorney join with his client in prosecuting a criminal charge against another, not for the purpose of subserving public justice, but in order to effect some private purpose of the client, such a prosecution is malicious; and proceeding upon such a motive, the attorney is bound equally with the client to see to it that there is probable cause for the prosecution. His case is not different from that of any other agent who assists his principal in performing an act to the hurt of a third person, undertaken without good motives or for justifiable ends. If in such a case the act be unlawful, the law does not discriminate in fixing the liability between the principal and the agent. It does not punish the former and absolve the latter; but the command of the one is no justification to the other, and they are both treated as co-trespassers or joint tort-feasors. From the standpoint of the law, the position of the attorney is, in such a case, exactly the same as that of the client; from the standpoint of sound morals, it is infinitely worse, for he prostitutes the privileges which the state has conferred upon him of appearing in its courts as an officer of those courts and a minister of justice. The client may, indeed, in many cases, excuse his motives by proving that he acted under the advice of his counsel, but no such refuge is left open to the attorney. He is learned in the law and knows the ground whereon he stands. His client confides in him and obeys his directions. He is the chief actor; and where actuated by the corrupt motives of effecting some private purpose of his client, he institutes an unfounded criminal prosecution against an innocent person without a belief in the

guilt of that person, founded upon reasonable evidence, public justice is not satisfied with holding the client liable and exonerating him. In this case it appears from the evidence that the assistant prosecuting attorney of the court of criminal correction was first applied to and declined to sign such an information against a reputable citizen; but, on a subsequent application to the prosecuting attorney, he signed it on the faith of the fact that the papers were presented to him by a firm of reputable members of the bar, and that the information which had been drawn up by them, stated a *prima facie* case of guilt. If a woman pursuing the occupation of Mrs. O'Donnell had gone alone to this officer and requested him to institute a proceeding for forgery against the plaintiff, he would have made an independent investigation of the facts, and the prosecution never would have been instituted. This consideration alone indicates the magnitude of the wrong done by the defendant in his *quasi* official character of an attorney and counselor of the courts of Msssouri. In a country where the legal profession is sensitive in regard of its own honor, and where professional discipline is properly administered, an attorney who would do this could not remain a member of the profession.

In order to make out the offence of forgery, in the case under consideration, it was not only necessary that the plaintiff should have altered the chattel mortgage without the consent of Lillie O'Donnell, but it was also necessary that he should have done it with a corrupt purpose. He may have done it without her consent, and yet he may have done it without a corrupt purpose, but may have done it to effectuate the previous understanding of the parties. The evidence shows that the defendant was Lillie O'Donnell's attorney in a civil action; that before he instituted the prosecution he had gone to the plaintiff and heard his version of the affair. It also tends to show that the alteration was made with the consent of Lillie O'Donnell, or, at most, that it was done

to give effect to the real intention of the parties, and, consequently, without any purpose to defraud. The testimony indicates that the defendant had all the facts before him when he instituted the prosecution, as fully, and perhaps more fully than Lillie O'Donnell possessed them; and it was a fair question for the jury upon the evidence whether he did not advise and instigate the prosecution for the mere purpose of coercing the Staley House Furnishing Company into compliance with the demand of Mrs. O'Donnell, whether or no he believed the plaintiff to be guilty of the crime of altering the instrument with a corrupt porpose, and whether or no he advised or instigated the prosecution with the corrupt purpose of forcing the Staley House Furnishing Company into compliance with Mrs. O'Donnell's wishes in respect of the civil action, were all questions which were proper for the consideration of the jury; and it is too plain for more extended argument that the court committed no error in submitting the case to them.

III. Complaint is made that the court refused to give the following instruction asked by the defendant:

"The court instructs the jury that if they believe from the evidence that the plaintiff was committed by the St. Louis court of criminal correction for the offence charged against him in the affidavit made by Lillie O'Donnell, then, *prima facie*, the defendant had probable cause to believe plaintiff guilty of the offence charged in such affidavit; and unless the jury believe from the evidence that such commitment by the St. Louis court of criminal correction was procured by the defendant by false and fraudulent testimony before the said court of criminal correction, the verdict must be for the defendant."

This instruction, as drawn, was not correct, because it made the liabilities of the defendant to depend upon the fact that the commitment by the St. Louis court of criminal correction was obtai'' d by false and fraudulent testimony, and left out of view the question of the de-

fendant's belief in the guilt of the plaintiff. The rule, as laid down by our supreme court, is this: "When an indictment has been found by the grand jury, or the defendant has been committed by the examining magistrate, this *prima facie* evidence of probable cause may be rebutted or overthrown by evidence showing that such indictment or commitment was obtained by false or fraudulent testimony, or other improper means, or by evidence showing that the prosecutor, notwithstanding the action of the grand jury or committing magistrate, did not himself believe the defendant to be guilty." *Sharpe v. Johnston,* 76 Mo. 660, 670.

Under this rule, although the plaintiff may have been committed by the court of criminal correction, and although the commitment may not have been obtained by false and fraudulent testimony, yet, if the defendant, nevertheless, did not believe the plaintiff to be guilty, he was liable. This element of belief on the part of the person instituting or instigating the prosecution, in the guilt of the accused, is an essential element in the definition of probable cause.

In *Vansickle v. Brown* (68 Mo. 627, 635), our supreme court considered this question at length, in view of the authorities in other jurisdictions, and overruling *Hickman v. Griffin* (6 Mo. 37), laid down the following rule: "That reasonable and probable cause which will relieve the prosecutor from liability is a belief by him in the guilt of the accused, based upon circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious man. And the question is not simply whether the defendant believed that he had probable cause, nor is it alone whether there was in fact probable cause, but the question is, did the defendant believe the plaintiff was guilty and did he have reasonable grounds for so believing?" The above instruction wholly ignores this principle and makes the commitment of the examining magistrate a justification to the prosecutor or instigator of the prosecution,

unless the commitment was procured by false and fraudulent testimony. It was, therefore, properly refused.

IV. The definition of the term, probable cause, given by the court in the second instruction, was in substantial conformity with the definition of the supreme court above quoted ; and the definition embodied in the twelfth instruction, requested by the defendant, and refused, ignored the element of the defendant's belief in the guilt of the plaintiff and was, therefore, incorrect and properly refused.

V. The remaining objections question the rulings of the court in refusing certain instructions offered by the defendant. It is sufficient to say that the court instructed the jury fully and fairly upon the whole case, and no apt instruction was tendered by the defendant which was not covered by instructions which the court had already given.

The judgment will be affirmed. It is so ordered. All the judges concur.