# Richmond.

## GLIDEWELL V. MURRAY-LACY AND COMPANY.

### March 13, 1919.

1. ABUSE OF PROCESS—*Right of Action For.*—It is well settled, as a general proposition of law, that abuse of process, as distinguished from malicious prosecution and from false imprisonment, may constitute an independent cause of action.

2. ABUSE OF PROCESS—*Distinguished from Malicious Prosecution.*—The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person.

3. ABUSE OF PROCESS—*Malice—Allegations.*—In an action for abuse of process, it is not necessary to allege or prove that the process was maliciously sued out, as in malicious prosecution, but it is necessary to allege and prove that the process after being properly sued out was maliciously misused or abused. The authorities are practically unanimous in holding that to maintain the action there must be proof of a wilful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and wilful perversion of it to the unlawful injury to another. From such use or employment of the process, as from any other wilful wrong, the law implies malice. It is safe to say that no action for abuse of process can be maintained without proof that the process was used under circumstances amounting to either actual or implied malice. The malice need not be expressly charged, but, if not, there must be an averment of facts from which the law implies the malice.

4. ABUSE OF PROCESS—*What Constitutes.*—If process is wilfully used for a purpose not justified by the law, it is an abuse for which an action will lie. The abuse consists in the unlawful use. While it cannot be wrong to do a lawful act in a lawful way, it is a wrong to do a lawful act in an unlawful way. It is the unlawful method by which the act is done that gives rise to the action, and the intentional use of this method constitutes malice in law.

5. ABUSE OF PROCESS—*Case at Bar.*—Defendants, tobacco warehouse-

men, procured plaintiff's arrest upon a warrant for a misde-
meanor under act of March 11, 1912 (Acts 1912, p. 232), which
provides that it shall be a misdemeanor to procure a loan
from a tobacco warehouseman upon a written promise or
pledge to sell tobacco through such warehouseman, and fail
to comply with such pledge, or repay the amount borrowed.
Defendants upon obtaining a settlement of their claim against
plaintiff, had him released and the warrant dismissed.

*Held:* That the transaction did not fall within the condemnation
of section 3760 of the Code of 1904 against concealing or
compounding offenses, but rather within the spirit, if not with-
in the terms, of section 3973, Code of 1904, authorizing a pri-
vate adjustment between the parties immediately concerned
in misdemeanors for which there is a remedy by civil action.

6. ABUSE OF PROCESS—*Elements—Case at Bar.*—To sustain an ac-
tion for abuse of process, two essentials must concur, first,
an ulterior motive, and, secondly, an act in the use of the
process not proper in the regular prosecution of the proceed-
ing, amounting to its perversion to some unlawful purpose.
While in the instant case it may be conceded that the first es-
sential element of the tort, an ulterior motive, was established,
as the evidence tended strongly to show that the purpose of
the defendants was not to enforce the criminal law, but to
collect their debt, proof of a second element was wanting.

7. ABUSE OF PROCESS—*Dismissal of Warrant Under Section 3973,
Code of 1904.—Irregularities—Estoppel.*—In an action for
abuse of process, where defendants claimed that the settlement
with plaintiff was in accordance with section 3973, Code of
1904, plaintiff cannot complain of an alleged irregularity in
the dismissal of the warrant against him, when what was done
was upon his own proposition.

8. STATUTES—*Ejusdem Generis*—Where particular classes of per-
sons or things are mentioned in a statute, general words pre-
ceding or following are to be restricted to persons or things
of a like kind with those particularly mentioned, unless plainly
otherwise intended.

9. STATUTES—*Ejusdem Generis—Settlement of Prosecution for Mis-
demeanor Under Section 3973, Code of 1904.*—Section 3973,
Code of 1904, authorizes a private adjustment between the par-
ties immediately concerned, "when a person is in jail or under
recognizance to answer a charge of assault and battery, or
other misdemeanor, for which there is a remedy by civil action."
The general words, "or other misdemeanor," following the
specific words, "assault and battery," are not limited to other
misdemeanors of the same kind as assault and battery.

10. MALICIOUS PROSECUTION—*Voluntary Compromise of Criminal
Prosecution.*—A voluntary compromise of a criminal prosecu-

tion, by the procurement or with the consent of the accused, in itself defeats a recovery in a subsequent action for malicious prosecution based upon the criminal proceeding.

11. COMPOUNDING FELONIES—*Validity of Private Settlements.*—Private adjustment of criminal prosecutions are not unusual and are frequently recognized as proper. In Virginia settlements of this character are expressly provided for by statute as to misdemeanors (Code of 1904, section 3973), and this is in accord with the general policy of the law. Of course, compounding or concealing crimes, or stifling prosecutions to defeat the ends of justice, will not be countenanced or permitted, but in prosecutions for offenses and cheats not involving any great offense against the public, the courts will encourage settlements between the parties as less injurious to the public than litigation.

12. ABUSE OF PROCESS—*Want of Probable Cause.*—The element of want of probable cause is immaterial in an action for abuse of process, as this element relates to the suing out and not to the use of the process.

13. ABUSE OF PROCESS—*Collection of Debts.*—Criminal process cannot be wrongfully used to collect a debt, if by "wrongfully" is meant a perversion or oppressive use of the process as distinguished from the secret motive which the party may have in procuring its issuance.

14. ABUSE OF PROCESS—*Validity of Process.*—An action for abuse of process presupposes an originally valid and regular process, duly and properly issued. There might be actionable abuses of process not thus originally regular and properly issued; but any action for such abuse would necessarily ignore the infirmities in the process itself and rely upon the abuse of it after it had been sued out, the latter constituting the gist of the action. Accordingly, plaintiff in an action for abuse of process, cannot contend that the warrant upon which he was arrested was barred by limitation or that the statute under which the warrant was issued was unconstitutional.

15. APPEAL AND ERROR—*Harmless Error—Instructions.* — Where, upon the evidence as introduced, a verdict for the defendants was the only one which the jury could have properly rendered, if there was any error in regard to the instructions, it was harmless.

16. APPEAL AND ERROR—*Harmless Error—Introduction of Evidence.*—Where evidence admitted over plaintiff's objection was of such a character that its exclusion could not properly have produced a different result, its admission did not prejudice plaintiff's rights.

Error to a judgment of the Circuit Court of Lunenburg county, in a proceeding by motion for a judgment for damages. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*George E. Allen,* for the plaintiff in error.

*Booker, McKinney & Settle,* for the defendants in error.

KELLY, J., delivered the opinion of the court.

Section 1 of an act of the General Assembly, approved March 11, 1912 (Acts 1912, p. 232), declares, "that it shall be unlawful for any person to borrow money from any person, firm or corporation conducting a business as sales tobacco warehousemen upon a written promise or pledge to sell with or through said person, firm or corporation, any tobacco, and thereafter fail or refuse to comply with the conditions of said written promise or pledge;" and section 2 thereof provides that any person who shall fail to comply with such written pledge, or to repay the amount borrowed, with legal interest, shall be guilty of a misdemeanor, and punished by fine, or imprisonment, or both.

A warrant, issued by a justice in Halifax county, at the instance of Murray-Lacy and Company, tobacco warehousemen, charging J. Y. Glidewell with having obtained from and failed to repay to them the sum of $93.00 under circumstances constituting a violation of this statute, was placed in the hands of J. T. Bass, a constable, of the county, who was also an employee of Murray-Lacy and Company, and, as such, charged with the duty of collecting outstanding obligations due to them. He took the warrant to the home of Glidewell, who resided in Lunenburg county, some six or seven miles from the town of Victoria, and

not finding him at home proceeded· to Victoria and delivered the warrant to the town sergeant with instructions to execute the same, having first, however, had it duly endorsed by a Lunenburg justice as provided by section 3957 of the Code. The arrest was effected by the sergeant about three o'clock in the afternoon of that day. Bass was notified and returned· at once to Victoria. Upon his return, he asked Glidewell "what he expected to do." After some conversation not detailed in the record, it was tentatively agreed between them that if Glidewell would execute a new note, with security, covering the $93.00 mentioned in the warrant, the correctness of which as a civil liability he did not deny, he would be at once released and the warrant dismissed. He was not willing, however, to definitely conclude any adjustment of the matter without consulting counsel, and accordingly the parties repaired to the law office of his attorney, Mr. Geo. E. Allen. Upon being asked by Mr. Allen, "What do you want?" Mr. Bass replied, "We want money." The subject of compromise was then taken up, and, upon an offer made by Glidewell, (but against the advice of his attorney, who stated that Bass had no right to make the arrest, and that the law under which the warrant was issued was unconstitutional), the new note, with security, was executed, and Glidewell was immediately released. Bass then. promptly proceeded to Halifax county and had the warrant dismissed.

In order to show fully all the circumstances under which Glidewell made the settlement, the following additional incidents should be mentioned: He had walked from his home to Victoria to get medicine for his sick child, but whether Bass was informed of this fact does not appear. The child's illness does not seem to have been regarded very seriously by him, as he remained in Victoria for some time after the settlement was made. He was told by Bass that unless the matter was settled he would not be released

but would be taken before the Halifax justice, and would certainly be convicted. After his arrest, he was not confined in jail, was allowed to stay at his brother's home, apparently without guard, was subjected to no harsh or oppressive treatment by the officers, but was kept under formal arrest from three o'clock in the afternoon until the settlement was concluded, about eleven o'clock that night. During the negotiations, Bass refused to release the prisoner upon an offer by the latter's counsel to be responsible for his appearance to answer the warrant at a future day.

Shortly after the termination, in the manner already set out, of the criminal prosecution against Glidewell, he instituted the present proceeding, by notice of motion, against Murray-Lacy & Co. and T. J. Bass, to recover damages of them alleged to have resulted from his arrest and imprisonment. The notice charged that the defendants wrongfully, unlawfully and maliciously sued out a criminal warrant against the plaintiff, and caused his arrest thereunder, "not for the purpose of enforcing the criminal laws of the Commonwealth, but solely for the ulterior and unlawful purpose of enforcing the collection of a debt of which plaintiff would otherwise have been discharged." The notice, which was entirely informal, did not attempt to designate *eo nomine* the cause of action; but the petition upon which this writ of error was granted interprets it as "a tort consisting of the abuse of process in using the criminal law to collect a debt." The case, as attempted to be made out by the plaintiff, was tried upon this interpretation, and we shall deal with it accordingly.

Upon the trial, there was a verdict and judgment for the defendants.

[1] The cause of action sought to be maintained in this proceeding is not malicious prosecution or false imprisonment, but the kindred, though less common one, of abuse of process. So far as we know, there is no Virginia case

upon the subject. It is well settled, however, as a general proposition of law, that abuse of process, as distinguished from malicious prosecution and from false imprisonment, may constitute an independent cause of action.

[2] The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person.

In *Wood* v. *Graves,* 144 Mass. 365, 11 N. E. 567, 59 Am. Rep. 95, the court said: "There is no doubt that an action lies for the malicious abuse of lawful procees, civil or criminal. It is to be assumed, in such a case, that the process was lawfully issued for a just cause, and is valid in form, and that the arrest or other proceeding upon the process was justifiable and proper in its inception. But the grievance to be redressed arises in consequence of subsequent proceedings. For example, if after arrest upon civil or criminal process, the person arrested is subjected to unwarrantable insults and indignities, is treated with cruelty, is deprived of proper food, or is otherwise treated with oppression and undue hardship, he has a remedy by an action against the officer, and against others who may unite with the officer in doing the wrong."

Freeman, in a note to *Bradshaw* v. *Frazier,* 113 Iowa, 579, 85 N. W. 752, 86 Am. St. Rep. 406, says: "An action for the abuse of a process of arrest usually presupposes that the arrest under the process was proper in its inception, and is founded on grievances arising in consquence of subsequent proceedings," citing *Whitten* v. *Bennett,* 86 Fed. 406, 30 C. C. A. 140; *Wood* v. *Graves, supra.*

In 1 Ruling Case Law, pp. 101-2, with reference to this particular cause of action, it is said: "There has been considerable confusion in the books as to the scope of the ac-

72

tion for abuse of process, and numerous cases may be found where it has been confounded with other classes of actions. * * * * Abuse of process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the malicious perversion of a regularly issued process whereby a result not lawfully or properly attainable under it is secured. * * The cases based upon a pure abuse of process are comparatively few, though there are numerous cases referred to and cited as such which are in fact actions for malicious prosecution. * * * The disstinctive nature of an action for malicious abuse of process, as compared with an action for malicious prosecution, is that it lies for the improper use of process after it has been issued, not for maliciously causing process to issue."

In 1 Cooley on Torts (3d ed.), p. 355, the author says: "Two elements are necessary to an action for the malicious abuse of legal process: First, the existence of an ulterior purpose; and, second, an act in the use of the process not proper in the regular prosecution of the proceeding. *Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.*" (Italics added.)

See also to the same general effect as the foregoing, 32 Cyc. 541; 3 Ann. Cas. 722, note; *Malone* v. *Belcher*, 216 Mass. 209, 103 N. E. 637, Ann. Cas. 1915A, 830, note 831-2.

[3] The civil injury now under discussion is sometimes referred to, even by the same text-writers and in the same judicial opinions, as "malicious abuse of process" and at other times merely as "abuse of process." This alternative use of these expressions is not usually intended to be discriminative; but there is at least a conflict of statement in the authorities as to the necessity of averring and proving malice in cases of this character. (3 Ann. Cas. 722; 35 Ann. Cas. 832.) It seems to us, however, that there is no reason for any confusion of thought, or for any difference of

opinion as to the part which malice plays in such cases. The true rule would plainly seem to be that it is not necessary to allege or prove that the process was maliciously sued out, as in malicious prosecution, but that it is necessary to allege and prove that the process after being properly sued out was maliciously misused or abused. The authorities are practically unanimous in holding that to maintain the action there must be proof of a wilful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and wilful perversion of it to the unlawful injury to another. From such use or employment of the process, as from any other wilful wrong, the law implies malice. It is safe to say that no action for abuse of process can be maintained without proof that the prcess was used under circumstances amounting to either actual or implied malice.

[4] To sum up this branch of the discussion, if process is wilfully used for a purpose not justified by the law, it is an abuse for which an action will lie. The abuse consists in the unlawful use.. While it cannot be wrong to do a lawful act in a lawful way, it is a wrong to do a lawful act in an unlawful way. It is the unlawful method by which the act is done that gives rise to the action, and the intentional use of this method constitutes malice in law. The malice need not be expressly charged, but, if not, there must be an averment of facts from which the law implies the malice.

[5, 6] The texts and judicial opinions to which we have referred are replete with citations to other similar discussions covering every conceivable phase of the tort known as abuse of process. Further elaboration or more extended citation here would serve no good purpose. The opening brief of counsel for the plaintiff in error contains a very satisfactory collection and review of the leading authorities on the subject, and concludes with a summary

which we believe to be a correct and sufficiently complete compendium of the law for all of the purposes of the instant case. We, therefore, quote from the brief as follows "An examination of these authorities will clearly show that the only essentials of the action of abuse of process are, first, an ulterior motive, and, secondly, an act in the use of the process not proper in the regular prosecution of the proceeding, though it is immaterial whether such process is baseless or not, the abuse consisting in its perversions to some unlawful purpose and in the wilful and oppressive use of it after its issue."

The plaintiff's case, however, when tested by the law as thus correctly stated by his counsel, cannot be maintained. It may be conceded that the first essential element of the tort, an ulterior motive, was established. To say the least of it, the evidence tended strongly to show that the real purpose of the defendants was not to enforce the criminal law, but to collect their debt, and, as a general proposition, it is illegal to use the criminal processes of the State merely to redress a private wrong. But before this ulterior purpose can be made the basis of a recovery in an action for the abuse of process, it must be coupled with the second essential element, that is, with "an act in the use of the process not proper in the regular prosecution of the proceeding," amounting to its perversion to some unlawful purpose. Proof of indirect motive will not alone sustain the action. (1 R. C. L. 103, 86 Am. St. Rep., note, p. 399, and other authorities cited *supra*.) It is at this point that the plaintiff's case unmistakably breaks down.

Whatever motive and purpose the defendants might have had, what they actually did was in keeping with the object of the act of March 11, 1912, and with the general legislative policy of the State with reference to misdemeanors of a minor character for which the party aggrieved

has also a private remedy. There can be no doubt that the act under which the warrant was issued was primarily intended to protect tobacco warehousemen against the loss of advances of the kind made by the defendants in this case. Nor was there anything reprehensible or unlawful in the settlement which the defendant made with the plaintiff by virtue of which the prosecution was withdrawn and the warrant dismissed. The transaction does not fall within the condemnation of section 3760 of the Code against concealing or compounding offenses, but rather within the spirit, if not within the terms of section 3973, authorizing a private adjustment between the parties immediately concerned in misdemeanors for which there is a remedy by civil action. The section last cited, so far as it need be quoted here, is as follows: "When a person is in jail or under recognizance to answer a charge of assault and battery, or other misdemeanor, for which there is a remedy by civil action * * if the party injured appear before the judge or justice who made the commitment or took the recognizance and acknowledge in writing that he has received satisfaction for the injury, such judge or justice, in his discretion, may, by an order under his hand, supersede the commitment or discharge the recognizance as to the accused and witnesses."

[7] It is contended that the formalities of the foregoing section were not complied with in the instant case. It does not affirmatively appear that the defendants ("parties injured") "acknowledged in writing that they had received satisfaction for the injury," nor just what were the terms of the final order of dismissal, but it does appear that they in fact received satisfaction, appeared before the justice, and had the warrant dismissed. This was done upon a proposition made by the accused, and was so much in accord with what he desired that he concluded the arrangement against the advice of his counsel. We need not stop to inquire

whether this possibly irregular dismissal of the warrant would have constituted a valid and complete defense on his part against any subsequent effort by the Commonwealth to proceed against him criminally for the same cause. It is certain that he himself cannot be heard to complain of the alleged irregularity.

[8, 9] It is further argued, however, that section 3973 of the Code does not apply to cases of this kind, because the general words, "or other misdemeanor," following the specific words "assault and battery," must, under the principle of *ejusdem generis*, be limited to other misdemeanors of the same kind as assault and battery, or, as otherwise expressed in the reply brief, "to cases of assault and battery or other misdemeanors resulting in personal injuries." Mr. Lile, in his notes on Statutes, p. 29, section 48, states the familiar rule of construction here invoked as follows: "Where particular classes of persons or things are mentioned in a statute, general words preceding or following are to be restricted to persons or things of a like kind with those particularly mentioned, unless plainly otherwise intended." It is clear that the construction of section 3973 is not within the rule, because "plainly otherwise intended." The statute, instead of impliedly restricting the meaning of the words "other misdemeanor" to offenses of a kindred nature with assault and battery, expressly extends their meaning so as to include the misdemeanor here involved along with all others "for which there is a remedy by civil action."

[10, 11] A voluntary compromise of a criminal prosecution, by the procurement or with the consent of the accused, in itself defeats a recovery in a subsequent action for malicious prosecution based upon the criminal proceeding. *Russell* v. *Morgan*, 24 R. I. 134, 52 Atl. 809, 811; *Langford* v. *Railroad Co.*, 144 Mass. 431, 11 N. E. 687, 699. If it be true, as contended on behalf of the plaintiff in error, that this rule does not apply in a case of abuse of process, still the existence of the rule itself shows that private ad-

justments of criminal prosecutions are not unusual and are frequently recognized as proper.

We have seen that in Virginia settlements of this character are expressly provided for by statute as to misdemeanors like that for which the plaintiff in error was being prosecuted, and this is in accord with the general policy of the law. Of course, compounding or concealing crimes, or stifling prosecutions to defeat the ends of justice, will not be countenanced or permitted; but, as said in 3 Wharton's Criminal Law, sec. 1877, p. 2079, "in prosecutions for offenses and cheats not involving any great offense against the public, the courts will encourage settlements between the parties as less injurious to the public than litigation."

Our conclusion is that there was no abuse, no malicious use, and no perversion of the process sued out against the plaintiff in error. There was no extortion thereunder, no collection of money not due from him, and he was subjected to no oppression, and to no indignity except such as was incident to an orderly arrest under due and regular process. The averment in his notice of motion, that but for the criminal prosecution he "would have been discharged" from the payment of the debt, and the statement in his bill of particulars that he had been adjudicated a bankrupt, are not supported by any proof, and appear to have been abandoned. Whatever motive may have prompted the defendants, they had a moral and legal right to accept satisfaction and withdraw the prosecution substantially as they did; and there is no ground upon which the plaintiff can legally ask for damages against them in this action.

[12, 13] A number of decisions from other jurisdictions are cited in the brief of counsel for plaintiff in error to support the proposition there advanced that criminal process cannot be wrongfully used to collect a debt, and that in such cases it is not necessary to prove malice or want of probable cause. The last named element, want of probable

cause, is of course, immaterial in all such cases, because that relates to the suing out and not to the use of the process. We concede also, and indeed it follows from what we have already said in this opinion, that criminal process cannot be wrongfully used to collect a debt, if by "wrongfully" is meant a perversion or oppressive use of the process as distinguished from the secret motive which the party may have in procuring its issuance. As to the proof of malice, we have seen that such proof is not necessary as to the issuance, but is necessary to the use of the process in order to sustain an action of this character. If any of the decisions relied upon by counsel for the proposition recited at the beginning of this paragraph, or for any other proposition, are in real conflict with the conclusions we have reached, we should feel obliged to disregard them; but we think it will be found that there is no substantial conflict between those cases and our decision in the present case. We will advert to a few of them by way of illustration:

In the case of *McClenny* v. *Inverarity*, 80 Kan. 569, 103 Pac. 82, 24 L. R. A. (N. S.) 301, which more nearly supports the plaintiff's contention than any other authority to which our attention has been called, "the evidence disclosed the fact that a warrant for the arrest of the plaintiff upon a criminal charge was used to collect a debt, and, it seems, *to extort an additional amount;*" and, moreover, there were aggravating and oppressive circumstances in that case in connection with the arrest.

*Lockhart* v. *Bear*, 117 N. C. 298, 23 S. H. 484, was a case in which a process of arrest was used to force a debtor to pay a debt out of property legally exempt from execution, and thus became a case for recovery because the process was used to compel the accused to do something which he was under no legal obligation to do, and against which he would have had a good defense in a civil proceeding.

*Shaw* v. *Spooner*, 9 N. H. 197, 32 Am. Dec. 348, was a case in which a criminal prosecution was instituted against a

nonresident defendant, by virtue of which extradition was procured, and the defendant, thus brought within the jurisdiction, was then induced to settle a civil liability in order to rid himself of the criminal prosecution.   The opinion clearly indicated that the process was improperly, if not dishonestly, used to bring about the extradition, and that the settlement made with the defendant was one not in accord with a sound legislative and judicial policy..

In *Wood* v. *Graves, supra,* a recovery was sustained, but the opinion in that case directly supports our conclusion here.   That this is true is shown not only by our quotation therefrom in a previous paragraph, but from the following language with which that opinion, after reviewing the instructions, conclude:   "Under these instructions, the jury could not properly hold the defendants responsible for merely setting the criminal law in motion, and arresting the plaintiff and holding him in custody until his discharge: but only for some distinct act or omission, which amounted to a misuse or abuse of the process after it had issued, some indignity or oppression beyond the mere fact of arrest and detention, some separate pressure to compel him to make the settlement."

We may well conclude this reference to the authorities cited for the plaintiff by saying, in the language of the court in *Bartlett* v. *Christhilf,* 69 Md. 219, 14 Atl. 518, "all these are instances in which the writ, regularly and properly sued out, was perverted, abused, and made an instrument of oppression"—a classification which does not embrace the case at bar.

[14]   It only remains to consider briefly two contentions on behalf of the plaintiff in error, not embraced in the foregoing discussion.   The first is that the warrant was barred by limitation, and the second, that the act of March 11, 1912, is unconstitutional.   Regardless of their merits, neither of these propositions can be availed of by the plaintiff in this proceeding.   Whether either or both of them are

73

sound propositions, and what effect they might have had in an action for false imprisonment or malicious prosecution, are questions which suggest themselves, but which are not material to the present controversy. They have to do, not with the use or abuse of process, but with its original issuance and validity. The plaintiff chose to sue for abuse of process, apparently and perhaps correctly believing that, in view of the facts of his case, this form of action was more favorable to him than any other he might adopt. We need hardly repeat that an action for abuse of process presupposes an originally valid and regular process, duly and properly issued. Authority cited *supra.* There might of course be actionable abuses of process not thus originally regular and properly issued, but any action for such abuse would necessarily ignore the infirmities in the process itself and rely upon the abuse of it after it had been sued out, the latter constituting the gist of the action.

Having reached the foregoing conclusions, it becomes unnecessary to discuss in detail the numerous assignments of error upon which we are asked to reverse the judgment of the lower court. They relate to instructions given or refused, to the admission of certain evidence, and to the refusal of the court to set aside the verdict as contrary to the law and the evidence.

[15, 16] Upon the evidence as introduced, a verdict for the defendants was the only one which the jury could have properly rendered; and, as a result, if there was any error in regard to the instructions, it was harmless. *Perrow* v. *Rixey,* 119 Va. 192, 89 S. E. 101, and cases cited. The evidence which was admitted over the plaintiff's objection was of such a character as that its exclusion could not properly have produced a different result. Its admission, therefore, did not prejudice his rights. *Norfolk* v. *Southern Ry. Co.,* 117 Va. 101, 110, 83 S. E. 1085.

There is no error in the judgment complained of, and it is affirmed.

*Affirmed.*