## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Mildred W. Frazer

v.

B. Vandenburg Hall

April 30, 1979

Case No. (Law) 5130

By JUDGE WILEY R. WRIGHT, JR.

The Defendant has demurred to the Motion for Judgment. The function of a demurrer is to test the legal sufficiency of the pleading to which it is directed; and in determining whether the Motion for Judgment states a good cause or causes of action, the Court will follow the rule that all allegations of material facts which are sufficiently pleaded are to be treated as true. Inasmuch as the alleged facts are set out in considerable detail in the Motion for Judgment, they will be set forth herein in summary fashion.

The Plaintiff is the owner, as *feme sole*, of certain property located in Annandale, Virginia, which is the

site of a school which she owns and runs as her business and livelihood.

The Defendant is an attorney at law practicing in the Commonwealth of Virginia.

The Plaintiff and one Lewis C. Frazer were divorced by Final Decree entered by the Circuit Court of Fairfax County on April 9, 1976. On April 14, 1975, the Plaintiff and Mr. Frazer entered into a Separation Agreement which resolved all of their property rights and which is still in force.

Sometime around January, 1977, Mr. Frazer decided that he wanted more money or property from the Plaintiff than he was entitled to under the Separation Agreement. Mr. Frazer then sought out and retained the Defendant for the purpose of improperly using the legal process of the Virginia courts to compel the Plaintiff to convey to Mr. Frazer a substantial amount of money and property.

The Defendant was fully aware of Mr. Frazer's malicious motive in seeking his legal advice for action against the Plaintiff. The Defendant knew or should have known, from the attendant circumstances generally and specifically from the 1975 Separation Agreement with which he was acquainted from the start, that he was acting wrongfully in knowingly assisting Mr. Frazer in his proposed meritless legal attack on the Plaintiff.

Nevertheless, the Defendant entered into a contractual agreement with Mr. Frazer whereby the Defendant would be compensated for undertaking the legal work desired by Mr. Frazer. This agreement gave the Defendant his own independent stake in the success of Mr. Frazer's project of compelling the Plaintiff to convey the property in question to Mr. Frazer, and the Defendant pursued this goal for his own personal profit as well as for the sake of his client.

Pursuant to their contract, the Defendant and Mr. Frazer devised a program of legal harassment and intimidation intended to wear the Plaintiff down physically, mentally and financially until she would agree to convey to Mr. Frazer such property as he demanded. The Defendant and Mr. Frazer undertook this effort knowing that Mr. Frazer had no cognizable right, title or interest in any of the Plaintiff's property and in a malicious and bad faith effort to harass her into surrendering some of her property to

Mr. Frazer in order to obtain peace of mind and to minimize her legal expenses.

Thereafter, the Defendant filed two separate and almost identical suits against the Plaintiff on behalf of Mr. Frazer, one of which asserted an interest in the Plaintiff's Annandale property and the other of which asserted an interest in property owned by the Plaintiff in Alexandria. Both of these suits were legally without merit and were filed for the purpose of maliciously intimidating the Plaintiff into conveying money or property to Mr. Frazer to which he was not entitled. The suit filed in the Circuit Court of Fairfax County cast a cloud on the title to the Plaintiff's school property in Annandale and thereby prevented her from developing the property or obtaining loans using it as security.

The suit filed in the Circuit Court of Alexandria was dismissed on September 22, 1978, after the Court granted the Motion for Summary Judgment made by the Plaintiff herein. Shortly thereafter, Mr. Frazer took a voluntary nonsuit in the suit pending in the Circuit Court of Fairfax County. The Plaintiff filed a subsequent suit to quiet title to the Annandale property, and this suit is still pending. Both of the suits filed by Mr.Frazer were conducted by him and the Defendant in such a manner as to harass and intimidate the Plaintiff, overcome her will and cause her great expense.

The Plaintiff asserts that she has sufficiently set forth three separate causes of action against the Defendant: (1) malicious prosecution (sometimes referred to as malicious use of process); (2) abuse of process; and (3) intentional infliction of emotional distress. They will be addressed in that order; however, the Court will first take up the question of whether an attorney may be held liable for actions taken on behalf of his client.

The Plaintiff suggests that the fee arrangement entered into between Mr. Frazer and the Defendant gave the Defendant an independent stake in the outcome of Mr. Frazer's undertaking and thereby subjected the Defendant to liability as a principal. The Court is of the opinion that the existence of the attorney-client relationship, whether it is based on a contingent or hourly fee contract, does not in and of itself subject the attorney to liability.

The Court is mindful of the principle that the courts must always be open to complaining parties and that attorneys must be free to represent their clients with vigor. This is not to say, however, that there are no limits to what an attorney can do on behalf of his client. The circumstances under which an attorney may be liable for malicious prosecution are stated in *Hoppe v. Klapperich*, 224 Minn. 224, 28 N.W.2d 780, 792 (1947), as follows:

> However, malice possessed by an attorney, or by him knowingly furthered in behalf of a client, if coupled with a want of probable cause, thwarts the administration of justice and is not sheltered by any privilege or official immunity. Assuming the joint existence of the essential elements of (a) *malice* and (b) *want of probable cause*, an action for damages for malicious prosecution lies against an attorney if in instituting the proceedings he knew of his client's malicious motives or if he himself was actuated by malice; and then only if, in addition, he did not have, upon the disclosure of alleged facts made by the client and by him accepted in good faith as true, a reasonable basis for believing there was a probable cause for the prosecution, or if he otherwise had knowledge showing an absence of probable cause. (Emphasis added in case.)
>
> ". . . But when an attorney submits to be made the instrument of prosecuting and imprisoning a party against whom he knows his client has no just claim, or cause of arrest, and that the plaintiff is actuated by illegal or malicious motives, he is morally and legally just as much liable as if he were prompted by his own malice against the injured party. If he will knowingly sell himself to work out the malicious purposes of another, he is a partaker of that malice as much as if it originated in his own bosom. The attorney, then, cannot always justify himself under the instructions of his client, no matter how positive they may be." *Burnap v. Marsh*, 13 Ill. 535, 538.

". . . If the attorney proceeds upon facts stated to him by his client, believing those facts to be true, and if those facts, if true, would constitute probable cause for instituting such a prosecution, then the attorney is exonerated. (Cases cited.) But if the attorney agree with his client to institute a prosecution which is groundless, and which is understood both by the attorney and by the client to be such, then the attorney is liable." *Staley v. Turner*, 21 Mo. App. 244, 250.

An attorney may also be liable to a third party for abuse of process. The rule is stated in 1 Am. Jur. 2d, *Abuse of Process*, Section 19, p. 265, as follows:

An attorney may be held liable in an action for damages for abuse of process, where the acts complained of are his own personal acts, or the acts of others wholly instigated and carried on by him. He may be held personally liable if he maliciously participates with others in an abuse of process or maliciously encourages and induces another to act as his instrumentality in committing an act constituting an abuse of process.

I perceive no reason why the foregoing principles should not also apply to the tort of intentional infliction of emotional distress.

The Court has reached the conclusion that the allegations of the Motion for Judgment are sufficient to make out a cause or causes of action against the Defendant to the same extent that the allegations in this and the companion case against Mr. Frazer are sufficient to state a cause or causes of action against Mr. Frazer.

### Malicious Prosecution

Notwithstanding the fact that such actions are not generally favored in law, it is well established that an action for malicious prosecution will lie against one who has maliciously and without probable cause instituted

a criminal proceeding which terminated in a manner not unfavorable to the accused. The Virginia Supreme Court has also recognized the existence of an action for malicious prosecution following a civil proceeding. See *Spengler v. Davy*, 56 Va. (15 Gratt.) 381 (1859), and *Ailstock v. Moore Lime Co.*, 104 Va. 565, 52 S.E. 213 (1905).

In order to set forth a cause of action for malicious prosecution following a criminal proceeding it must be alleged: (1) that the prosecution was set on foot by the now defendant and that it had terminated in a manner not unfavorable to the now plaintiff; (2) that it was instituted or procured by the cooperation of the now defendant; (3) that it was without probable cause; and (4) that it was malicious. *Wiggs v. Farmer*, 205 Va. 149, 135 S.E.2d 829 (1964); *Giant of Virginia v. Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967).

An action for malicious prosecution of a civil action is governed in general by the same rules as one arising out of a criminal action. There is, however, one significant difference: the nature of the injury that must be alleged. The courts are not in accord as to this requirement and there are two distinct lines of authority. See 52 Am. Jur. 2d, *Malicious Prosecution*, Sections 9 and 10.

The line of decisions that follows the "English Rule" holds that no action will lie for the malicious prosecution of a civil suit where there was no arrest of the person, no seizure of the property of the Defendant or other special injury sustained that would not ordinarily result in all suits prosecuted for like causes of action. Under the "English Rule" the usual expenses, annoyances and inconveniences incident to defending a civil suit are regarded as insufficient special damage or injury to sustain an action for malicious prosecution. *North Point Const. Co. v. Sagner*, 185 Md. 200, 44 A.2d 441 (1945). The other line of authority does not require a showing of special injury.

Although the Virginia cases which have come to my attention would appear to qualify under the "English Rule," I have been unable to discern whether the Virginia Supreme Court has expressly adopted either rule. The case of *National Surety Company v. Page*, 58 F.2d 145, rehearing denied, 59 F.2d 370 (4th Cir. 1932), which was cited by the Plaintiff in her brief, follows the "English Rule,"

and I have come to the conclusion that the "English Rule" should be followed in this case.

I have tested the allegations of the Motion for Judgment against the required elements and have reached the conclusion that they are legally sufficient except for the requirement that there be an allegation of special injury. Here, the Motion for Judgment is partially defective.

The Plaintiff has attempted to combine two separate causes of action for malicious prosecution into one case without setting them out in separate counts. She makes complaint about a chancery suit that was filed in the Circuit Court of Fairfax County and about a chancery suit that was filed in the Circuit Court of Alexandria. Although she alleges that the two suits were almost identical, they were different in one significant respect. The Fairfax suit placed a cloud on the title to the Annandale property of the Plaintiff and thereby adversely affected her business. The Alexandria suit did not place a cloud on the title to the Alexandria property of the Plaintiff.

In *Ring v. Ring*, 228 A.2d 582, 584 (R.I. 1967) the Court quoted with approval the following statement of the concept of special injury from 1 Cooley, *Torts* (4th ed.), Chap. 6, Section 128, p. 426:

> So a suit for malicious prosecution will lie where the plaintiff's property or business has been interfered with by the appointment of a receiver, the *granting of an injunction*, by writ of replevin, by the filing of a *lis pendens* or the preferment of charges against a police officer which results in his suspension from duty. (Emphasis added in original.)

The Court has reached the conclusion that sufficient special injury is alleged insofar as the Fairfax suit is concerned and that the opposite is true in the case of the Alexandria suit. The Court is also of opinion that the Alexandria suit cannot be tacked to the Fairfax suit so as to permit a recovery of the combined damages in this case. Accordingly, the Demurrer will be sustained as to the claim for malicious prosecution insofar as it

relates to the damages sustained by the Plaintiff as the result of the Alexandria suit.

### Abuse of Process

Abuse of process has been recognized by the Virginia Supreme Court as a tort separate and apart from malicious prosecution and false imprisonment. In the case of *Glidewell v. Murray-Lacy*, 124 Va. 563, 569, 98 S.E.665 (1919), the Court said:

> The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person.

In the same case at 124 Va. 570, the Court quotes from 1 Ruling Case Law, pp. 101-2, as follows:

> "Abuse of process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the malicious perversion of a regularly issued process whereby a result not lawfully or properly attainable under it is secured. . . . The distinctive nature of an action for malicious abuse of process, as compared with an action for malicious prosecution, is that it lies for the improper use of process after it has been issued, not for maliciously causing process to issue."

Again, in the same case at 124 Va. 570, the Court quotes the following statement from 1 *Cooley on Torts* (3d ed.), p. 355:

> "Two elements are necessary to an action for the malicious abuse of legal process: First, the existence of an ulterior purpose; and second, an act in the use of the process not proper

in the regular prosecution of the proceeding. *Reqular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.*" (Emphasis added in the case.)

In *Ross v. Peck Iron and Metal Company, Inc.*, 264 F.2d 262, 267, 268 (4th Cir. 1959), the Court characterizes abuse of process as follows:

> The crux of the tort of abuse of process, whether civil or criminal, lies in the malicious abuse or misuse of a process or writ which has been lawfully and properly issued; in other words, although the writ was issued upon the proper grounds and with probable cause, it was caused to issue and was used, not for the purpose for which it was intended, but for some collateral object. (Citations omitted)

Has the Plaintiff alleged the existence of the two essential elements of ulterior purpose and improper use of regularly issued process? My reading of the allegations has led me to the conclusion that both elements are present and that they are sufficient to make out a case of abuse of process. Accordingly, the Demurrer will be overruled insofar as it relates to this cause of action.

### Intentional Infliction of Emotional Distress

The last cause of action asserted by the Plaintiff against the Defendant is that of intentional infliction of emotional distress.

The Plaintiff contends that this case is governed by *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438, 158 S.E.2d 124 (1967), because she has alleged, among other things, that she sustained physical injury as a result of the Defendant's actions. The injury alleged is "a certain deterioration in the condition of her left eye." This allegation is so vague and indefinite, both as to the nature of the injury sustained and the causal connection between the Defendant's conduct and the injury, as to be no allegation at all. Thus, *Moore* is inapplicable.

The Court is of the opinion that this case is governed by *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), a case in which the plaintiff sought to recover for emotional distress unaccompanied by physical injury.

In *Womack* the Supreme Court of Virginia stated at 215 Va. 342:

> We adopt the view that a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

The Court is of opinion that the Plaintiff has failed to set forth a cause of action for intentional infliction of emotional distress because the facts alleged are not in conformity with the second and fourth elements. Accordingly, the Demurrer will be sustained as to this cause of action.