923 F.2d 854
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul J. DONOHOE, Plaintiff-Appellee/Cross-Appellant,
v.
Charles L. BURD, Defendant-Appellant/Cross-Appellee
 Nos. 89-3927, 89-3928, 90-3248 and 90-3249.
 United States Court of Appeals, Sixth Circuit.
 Jan. 14, 1991.
 
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Charles J. Burd appeals the judgment for plaintiff on the abuse of process charge, the amount of punitive damages, and the amount of attorneys fees. Plaintiff Paul J. Donohoe appeals the district court's judgment in favor of Burd on his malicious prosecution claim, as well as the amount awarded on the abuse of process claim. For the following reasons, we affirm all aspects of the district court's decision.
 
 
 2
 * From 1981 to 1986, Donohoe, a former Air Force colonel, was senior vice president at a bank in Huntington, West Virginia. Burd was a lawyer who was elected municipal judge for Lawrence County, Ohio in November 1981. Burd, who was counsel to a company named Markin Tool, met with Donohoe to try to arrange financing for Markin on November 17, 1981. At the November 17 meeting, Burd expressed an interest in investing in Markin. Donohoe then told Burd that they should go to the First Bank of Ceredo (West Virginia) so that the four investors, including Burd and Donohoe, could give their personal guaranties as required by the bank for a loan to Markin. The district court found that Burd instructed Donohoe, but not the Ceredo Bank, that Burd's investing in Markin Tool was contingent on Donohoe's personal guaranty.
 
 
 3
 On November 20, 1981, Burd signed a blank personal loan guaranty dated November 20. The bank also issued a loan check, dated November 20, for $136,000.00. On December 2, 1981, Markin Tool executed a promissory note for $136,000.00 and a new security agreement indicating that Burd remained a guarantor of the loan. Burd then contacted the bank to inform it that he would not become an equity owner of Markin Tool. Donohoe then purchased the 25% share that was allotted for Burd, making him a 50% owner. By 1984, Donohoe had acquired 100% of the shares of Markin Tool.
 
 
 4
 The Ceredo Bank informed Burd in January 1982 that his guaranty could not be released because it was considered collateral for the November 20, 1981 loan. Burd then prepared a "hold-harmless agreement" designed to protect him from liability to the bank. Donohoe and the other investors signed the agreement on February 17, 1982. When Markin Tool fell behind on the loan payments, the bank made clear that it was not a party to the hold-harmless agreement and that Burd could be held liable for the loan. Burd had Donohoe sign a second hold-harmless agreement in August 1984.
 
 
 5
 In July 1985, the bank sued the four guarantors in the Circuit Court of Wayne County, West Virginia, asking for repayment of the November 20, 1981 loan. Burd then resigned his position as legal representative of Markin Tool. Burd settled with the bank for $17,500.00, and pressed Donohoe for repayment under the hold-harmless agreements. Donohoe, however, was financially unable to repay Burd. As a result, Burd filed a civil suit in the Lawrence County (Ohio) Court of Common Pleas to enforce the hold-harmless agreements. The day before, however, Donohoe had filed for Chapter 11 protection in the U.S. Bankruptcy Court for the Southern District of Ohio. As a result, Burd's suit did not go forward.
 
 
 6
 Donohoe experienced other financial woes. After being arrested and indicted on bad check charges, Donohoe made restitution on the checks. As a result, the criminal charges were dropped on December 11, 1985.
 
 
 7
 In December 1985, during an informal conversation with Lawrence County prosecutor Richard Meyers, Burd mentioned his experience with Donohoe, Markin Tool, and Ceredo Bank. Meyers said that a violation of criminal law could be involved, and he promised to investigate. Following a brief investigation, Burd executed a criminal complaint against Donohoe alleging theft under Ohio Rev.Code Sec. 2913.02 accusing Donohoe of exceeding the conditions of Burd's guaranty. Donohoe was arrested, and a grand jury returned an indictment based on the testimony of Burd and Steve Markin, a co-investor. Following negotiations among the parties and the judge, Donohoe agreed to make restitution in exchange for a dismissal.
 
 
 8
 Paul Donohoe filed this diversity action against Charles Burd on December 29, 1986, in the U.S. District Court for the Southern District of Ohio, Judge Herman J. Weber presiding. The complaint alleged claims under Ohio common law for malicious prosecution and abuse of process.
 
 
 9
 The trial took place in October 1988. On August 30, 1989, the district court made the following findings of fact with respect to the events surrounding Donohoe's arrest:
 
 
 10
 1. Burd's statememt that Ceredo Bank officials assured him on November 20, 1981 that he would not be held liable unless he became a stockholder in Markin Tool was not credible. Testimony established that the loan was not contingent, and bank officials would not have loaned the money without Burd's guaranty.
 
 
 11
 2. Burd had extensive experience, as a lawyer, with financial transactions. Therefore, he should have known that his guaranty created obligations between himself and the bank, not between himself and Donohoe. Donohoe could not obtain the release of the guaranty.
 
 
 12
 3. Burd did not disclose to Meyers, the prosecutor, that his civil complaint did not allege any improprieties by Donohoe.
 
 
 13
 4. Burd and Markin's testimony was inconsistent with other testimony and exhibits.
 
 
 14
 5. Burd signed the criminal complaint although it is normally signed by a police officer.
 
 
 15
 6. Donohoe was held in jail, under harsh conditions, for two nights following his arrest before being told the specifics of the charges.
 
 
 16
 7. Burd's only reason for initiating the criminal proceedings against Donohoe was to be reimbursed.
 
 
 17
 8. At all times, Donohoe acknowledged his debt to Burd and did try to obtain Burd's release from the guaranty.
 
 
 18
 Regarding the elements of a malicious prosecution claim under Ohio law, the district court found that: (1) Burd's signing of the complaint to collect a personal debt was malicious; and (2) Burd instituted the proceedings without probable cause. The next element of a malicious prosecution claim is termination of the prior proceeding in plaintiff's favor. In this regard, the court concluded that
 
 
 19
 payment of $17,500 to Burd ... and the resultant dismissal of the charges was a voluntary compromise and, therefore, ... the prior criminal proceedings were not terminated in favor of plaintiff. Under the particular facts of this case, this Court concludes that plaintiff has not met his burden of proof on the third element of his malicious prosecution claim--that the prior suit was terminated in his favor. Therefore, plaintiff's cause of action for malicious prosecution is dismissed on its merits.
 
 
 20
 J.App. (vol.I) at 49.
 
 
 21
 As to the abuse of process claim, the court first found that Burd had used the legal process for the ulterior purpose of collecting a bad debt. Second, the court found that Burd intentionally committed improper acts after the commencement of proceedings, specifically, making it clear that he only wanted to recover the money. Thus, Donohoe had proven his abuse of process claim.
 
 
 22
 As to damages, the court rejected the testimony of Donohoe's psychiatrist, and found that "a reasonable person could and would have recovered from the trauma of these events upon his release from jail and that, under these particular circumstances, plaintiff's emotional instability cannot, with any amount of certainty or probability, be attributable to the defendant's wrongful acts." J.App. (vol. I) at 53. The court therefore awarded Donohoe $5,250.00 for expenses in defending against the theft charge and $1,000.00 for nominal compensatory damages from the abuse of process. Punitive damages were awarded in the amount of $18,000.00 because of Donohoe's "shocking and outrageous" abuse of the criminal justice system to collect a debt. J.App. (vol. I) at 55. In February 1990, the district court held a hearing on Donohoe's application for attorneys fees. The court awarded attorney fees and costs of $68,808.10. Both parties filed notices of appeal on September 29, 1989.
 
 II
 
 23
 We review the district court's findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous when, in spite of the supporting evidence, " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Loudermill v. Cleveland Bd. of Educ., 844 F.2d 304, 308 (6th Cir.1988) (citation omitted), cert. denied, 488 U.S. 941 (1988). This court reviews the district court's conclusions of law under a de novo standard. See Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 143 (6th Cir.1983).
 
 
 24
 To prove his malicious prosecution claim, Donohoe must show the following: (1) malicious institution of prior proceedings against the plaintiff by Burd; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in Donohoe's favor; (4) seizure of plaintiff's person[1]; and (5) injury or damages suffered by Donohoe. Crawford v. Euclid Nat'l Bank, 19 Ohio St.3d 135, 139, 483 N.E.2d 1168, 1172 (1985) (Brown, J., concurring). The district court dismissed the malicious prosecution claim against Burd because it found that the suit was not terminated in Donohoe's favor.
 
 
 25
 Donohoe argues that because the payment was made under duress, the malicious prosecution claim should not be dismissed, citing Curls v. Lenox Garage, 68 Ohio App. 285, 40 N.E.2d 213 (Hamilton Co.1941) (whether payment to drop charges was voluntary or under duress was jury question). In demonstrating that he involuntarily paid the money while under duress, Donohoe states that "Any reasonable man, under the circumstances of this case, would have paid Burd the money even though he were innocent of any crime." Plaintiff-Appellee's Reply Brief at 22. Donohoe also emphasizes the tight-knit Lawrence County legal community, the circumstances of his arrest, and his fear of going to prison if convicted, apparently to demonstrate Donohoe's belief that the system was rigged against him. The "rigged system" argument asserts that Burd and Markin's testimony could have unjustly convicted him, and overturning the conviction on appeal would be hopeless because credibility of witnesses is not resolved on appeal.
 
 
 26
 Burd points to Neff v. Engle, 28 Ohio App.3d 44, 501 N.E.2d 675 (Franklin Cty.1986), which stated that in a compromise or settlement, "the accused, having consented to a termination which leaves open the question of guilt and possible conviction, cannot take advantage of it." 28 Ohio App.3d at 45, 501 N.E.2d at 676. Burd also states that Donohoe's implication that he could not receive a fair trial in Lawrence County is groundless. In addition, Burd cites to the Restatement, which provides that
 
 
 27
 A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for a malicious prosecution if:
 
 
 28
 (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused[.]
 
 
 29
 Restatement (Second) of Torts Sec. 660 (1977).
 
 
 30
 We do not find that Donohoe has demonstrated duress in the sense of being coerced to do something against his free will. Clearly, there were strong reasons for Donohoe to pay the money, otherwise he would not have chosen to have done so. Fear of prison is most likely the impetus behind most settlements of criminal charges. If a defendant could avoid proving this element of malicious prosecution by claiming fear of prison, then the elements of malicious prosecution claim would be greatly simplified. Likewise, Donohoe's argument that the Lawrence County judicial system was pro-Burd to the extent that his settlement was coerced does not eliminate the fact that Donohoe chose to pay the money, on advice of counsel. Donohoe's lawyer testified that he thought he had a strong case, that he could overcome the charges, and that he could receive a fair trial. J.App. (vol. I) at 153-54. Thus, Donohoe did not prove the elements of a malicious prosecution claim.
 
 III
 
 31
 Burd argues that the district court erred in finding that he committed an abuse of process. The elements of an abuse of process claim are: (1) use of the legal process for an ulterior purpose; and (2) intentional further improper acts in the use of the process. Clermont Environmental Reclamation Co. v. Hancock, 16 Ohio App.3d 9, 11, 474 N.E.2d 357, 361 (Clermont Cty.1984).
 
 
 32
 In describing the tort of abuse of process, the district court stated that "[a]buse of process occurs when one perverts the original process for some purpose outside the scope of its legal limits.... abuse of process lies when one misuses the process and injects malice after the process issues." J.App. (vol. I) at 41 (emphasis in original). The acts which the district court found to be in furtherance of the abuse of process were: (1) Burd's statement to the prosecutor that he didn't want to see Donohoe go to jail, but only wanted the money; (2) knowing that Donohoe had paid to dismiss earlier bad check charges, Burd refused to accept time payments and insisted on full payment; (3) failure to sue Markin and Iqbal, the other initial investors in Markin Tool; and (4) Burd failed to inform the prosecutor of the civil suit against Donohoe. Id. at 51-52.
 
 
 33
 Burd argues that none of his post-arrest actions were improper, and again stresses the independence of the prosecutor's actions. Burd's strongest argument is that merely agreeing to drop the criminal charges in exchange for restitution does not support a claim of abuse of process. Burd point to Mullins v. Sanders, 189 Va. 624, 634, 54 S.E.2d 116, 122 (1949), which states that
 
 
 34
 the mere fact that the creditor has procured a criminal warrant against the debtor for the ulterior purpose of enforcing the collection of the debt will not of itself support an action for abuse of process ... So long as the creditor merely aids in the prosecution of the criminal proceeding in the regular manner--that is, by procuring the warrant in a proper way and by appearing as a witness for the prosecution in the criminal proceeding--he is not liable in an action for abuse of process, although the criminal prosecution may result in the payment of the debt.
 
 
 35
 Donohoe argues, and the district court agreed, that Burd's role exceeded that of a typical complaining witness: (1) Burd was present in the prosecutor's office when Markin gave his statement; (2) Burd met with Markin before they testified at the preliminary hearing; (3) he sat with the prosecutor at the hearing when not testifying; and (4) Burd contacted Markin as to the correct time to appear before the grand jury. Reply Brief of Plaintiff at 17. We conclude that these irregularities in the prosecution of Donohoe, along with the questions the district court raised about the truthfulness of Burd's testimony at the preliminary hearing, support affirmance of the abuse of process claim.
 
 IV
 
 36
 Donohoe and Burd make additional arguments concerning the amount awarded for emotional distress, the amount awarded for attorneys fees and costs, and the amount of punitive damages. Upon careful consideration, we find that the district court's determinations as to emotional distress damages, attorneys fees, and punitives do not merit reversal.
 
 IV
 
 37
 Charles Burd died in an auto accident on September 9, 1990. Under Ohio Rev.Code Sec. 2311.21, an action for malicious prosecution abates upon the death of either party. Thus, a motion to dismiss the appeal of Donohoe for lack of jurisdiction was filed by Burd's representative on November 15, 1990. As counsel for Burd conceded at oral argument, however, the abatement question would only arise if this court reversed. As we affirm the judgment of the district court in all respects, we find it unnecessary to decide the abatement issue.
 
 V
 
 38
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In accordance with the majority of states, the Ohio Supreme Court recently eliminated this requirement from the elements of a malicious prosecution claim. Trussell v. General Motors Corp. 53 Ohio St.3d 142, 146, 559 N.E.2d 732, 736 (1990)