**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 08-1569**

—————————

BNX SYSTEMS CORPORATION,

        Debtor - Appellee,

    v.

JOHN NARDOLILLI,

        Defendant - Appellant.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:07-cv-01308-LO-TRJ)

—————————

Argued: January 28, 2010        Decided: March 1, 2010

—————————

Before TRAXLER, Chief Judge, and KING and GREGORY, Circuit Judges.

—————————

Vacated and remanded by unpublished per curiam opinion.

—————————

**ARGUED:** Steven Ellison, BROAD & CASSEL, West Palm Beach, Florida, for Appellant. Kevin M. O'Donnell, HENRY & O'DONNELL, PC, Alexandria, Virginia, for Appellee. **ON BRIEF:** Drewry B. Hutcheson, Jr., MCGINLEY ELSBERG & HUTCHESON, PLC, Alexandria, Virginia, for Appellant.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John Nardolilli appeals a bankruptcy court judgment against him and in favor of BNX Systems Corporation ("BNX") concerning BNX's claims of abuse of process and intentional interference with business expectancy. Finding the evidence insufficient to sustain BNX's claims, we vacate the judgment and remand for entry of judgment in Nardolilli's favor.

## I.

Worldwide Investigations & Research, Inc. ("Worldwide") and BNX are both corporations that provide computer security solutions for businesses. Nardolilli is Worldwide's president and principal. After Worldwide and BNX entered into an agreement to sell certain technologies to Citibank, a dispute arose between Worldwide and BNX resulting in litigation pending in the Southern District of Florida. Part of that dispute concerned intellectual property rights to software BNX developed under a contract with Worldwide. While the Florida action was pending, BNX filed for Chapter 11 bankruptcy protection.

In the months preceding the bankruptcy filing, BNX hired a company to market BNX in the hopes of either obtaining additional capital or identifying a partner for a merger with, or acquisition of, BNX. Eventually, BNX decided to file for bankruptcy protection and found a company, Aladdin Knowledge

2

Systems, that agreed to make a bid of $750,000 in a proposed auction of BNX's assets in bankruptcy. In an effort to expedite the process, BNX requested that the bankruptcy court approve the proposed bidding procedures, set a deadline of noon on January 23, 2006, for third parties to submit qualified bids, and set January 30, 2006, as the date for the sale of BNX's assets. Worldwide objected on the basis that some of the assets that BNX proposed to sell were the subject of Worldwide's claims in the Florida litigation. The bankruptcy court ultimately overruled Worldwide's objections.

Shortly thereafter, Worldwide filed a complaint in the bankruptcy court seeking a determination of ownership rights to certain of BNX's assets, including some of BNX's core technology. Worldwide also filed a separate objection to BNX's motion to sell its assets. The objection alleged that BNX sought to sell intellectual property that belonged to Worldwide. Additionally, Nardolilli asserted in a letter to the United States Department of Commerce that the sale of BNX's assets would violate export restrictions. The government inquiry that followed resulted in a several-week delay of the intended January 30, 2006, sale date.

Between February 24, 2006, and March 2, 2006, the bankruptcy court conducted an expedited trial on Worldwide's complaint and objection. On March 2, 2006, upon the completion

3

of the trial, the court reopened the bidding process. Subsequently, Citibank made a bid for the first time.[1] Aladdin and Citibank then made several additional bids and eventually a substantial portion of BNX's assets were sold to Citibank for $2.2 million. The remaining assets were sold to a third party for an additional $38,000.

Thereafter, BNX filed an adversary proceeding in the bankruptcy court, objecting to certain proofs of claims filed by Worldwide and asserting counterclaims. The counterclaims alleged under Virginia law that Worldwide and Nardolilli had abused the process of the bankruptcy court and had intentionally interfered in BNX's legitimate business expectancies regarding the sale of its assets by filing false claims in the bankruptcy court asserting ownership of BNX's intellectual property. The counterclaims further asserted that Worldwide and Nardolilli filed false claims in order to delay the sale process and create a cloud on title so that Worldwide and Nardolilli would eventually be able to purchase BNX assets at a reduced price. Worldwide ultimately filed a Chapter 7 bankruptcy petition in

---

[1] Citibank was the only qualified bidder other than Aladdin. During the trial, Worldwide had itself purportedly submitted a qualified bid but was later forced to rescind it because Worldwide never received the financing commitment necessary to bid on BNX's assets.

the Southern District of Florida, and the case was stayed as to it.

After a trial, the bankruptcy court found BNX had proven its claims for abuse of process and interference with business expectancy against Nardolilli. The court awarded judgment to BNX against Nardolilli in the amount of $223,957.00 in actual damages and $100,000.00 in punitive damages.[2] The district court subsequently affirmed the judgment on appeal.

## II.

Nardolilli argues that the bankruptcy court erred in awarding judgment to BNX, contending that BNX failed to produce evidence sufficient to establish the elements of either of its claims. We agree.[3]

We review the district court's decision de novo, "effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." Cypher Chiropractic Ctr. v. Runski (In re Runski), 102

---

[2] The actual damages were for "attorneys' fees incurred to resist Nardolilli's false claims and the costs of operating BNX for the additional weeks while the claims were being resolved and the auction finally held." J.A. 476.

[3] Because we conclude that Nardolilli was entitled to judgment in his favor on this ground, we do not address his remaining arguments.

5

F.3d 744, 745 (4th Cir. 1996). "[W]e review legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error." Id. The parties agree that Virginia law governs BNX's claims.

A.

Nardolilli first argues that BNX failed to present evidence sufficient to sustain its abuse-of-process claim.

Abuse of process is "the wrongful use of process after it has been issued." Triangle Auto Auction, Inc. v. Cash, 380 S.E.2d 649, 650 (Va. 1989). The elements of an abuse-of-process claim are: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." Donohoe Constr. Co. v. Mt. Vernon Assoc., 369 S.E.2d 857, 862 (Va. 1988). In light of the presence of the second element, "[a] legitimate use of process to its authorized conclusion, even when carried out with bad intention," does not constitute abuse of process. Id.; see Ross v. Peck Iron & Metal Co., 264 F.2d 262, 268 (4th Cir. 1959). Rather, "[t]he gravamen of the tort lies in the abuse or the perversion of the process after it has been issued."[4] Donohoe

---

[4] The Donohoe court explained that, in this way, abuse of process is different from the "kindred, but distinctly different" tort of malicious prosecution, which involves "maliciously causing process to issue." Donohoe Constr. Co. v. (Continued)

6

Constr. Co., 369 S.E.2d at 862 (emphasis added); see Restatement (Second) of Torts § 682 cmt. a (1977) (explaining that it is "[t]he subsequent misuse of . . . process, [even if] properly obtained," that constitutes the tort of abuse of process (emphasis added)). An example of such an act would be suing a person, obtaining a judgment against him, and then, after he is aware that the debt has been paid, taking out execution on the judgment. See id. cmt. a, illus. 2. Other examples would include using the process that has already been issued to force the payment of a debt, see Mullins v. Sanders, 54 S.E.2d 116, 122 (Va. 1949), or "as a means of extortion," Donohoe Constr. Co., 369 S.E.2d at 862.

It is evidence concerning the second element that Nardolilli contends is lacking. In response, BNX argues only that it established that Nardolilli filed his claims in order to attempt to buy BNX for less than market value. But while BNX's evidence on this point certainly tends to show that Nardolilli's filing of his claims was improperly motivated, it does not show that he committed any improper act to unfairly use those claims once they were filed. In the view of BNX, the abuse-of-process tort was complete as soon as the claims were filed. As

Mt. Vernon Assocs., 369 S.E.2d 857, 862 (Va. 1988) (internal quotation marks omitted).

7

explained previously, this simply cannot be because of the necessity of an improper use of the process after filing. See id. at 862-63 (holding that evidence was insufficient to establish abuse-of-process when although it supported the jury's finding that defendant "filed [a] mechanic's lien with the ulterior purpose of avoiding imposition of liquidated damages for delay [of performance of a construction contract] or of forcing a settlement" of claims relating to the contract, it failed to establish that the defendant "committed any 'act in the use of the process not proper in the regular prosecution of the proceeding'"). In Virginia, even the issuance of a baseless process will not alone be sufficient to support a claim for abuse of process. See Glidewell v. Murray-Lacy & Co., 98 S.E. 665, 668 (Va. 1919) (explaining that whether the process is baseless is immaterial in an action for abuse of process). There must be a subsequent perversion of that process, and that is what is lacking here.

B.

Nardolilli next contends that BNX failed to present evidence to sustain its claim for interference with business expectancy.

To establish such a cause of action under Virginia law, a plaintiff must show "(1) the existence of a business relationship or expectancy, with a probability of future

8

economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." Commercial Bus. Sys., Inc. v. Halifax Corp., 484 S.E.2d 892, 896 (Va. 1997). To prove the first element, the evidence "must establish expectancy by and between two parties at least, based upon something that is a concrete move in that direction." Moore v. United Int'l Investigative Servs., Inc., 209 F. Supp. 2d 611, 619-20 (E.D. Va. 2002).

Here, BNX failed to prove such an expectancy, having presented no evidence that, at the time of Nardolilli's filings, it expected any buyer, let alone a particular buyer, would outbid Aladdin. And, even assuming that BNX established a business expectancy with its expected sale to Aladdin, BNX suffered no loss from any interference with that sale, as it resulted in BNX receiving a much larger bid from Citibank.

BNX maintains that it showed it had a business expectancy in having an auction free from the effects of Nardolilli's improper filings, and BNX argues it established all the necessary elements with regard to that expectancy. BNX points us to no authority supporting this novel theory. An expectancy in such a process is simply not the sort of expectancy that the tort of interference with business expectancy protects. See,

9

e.g., <u>Westside Ctr. Assocs. v. Safeway Stores 23, Inc.</u>, 49 Cal. Rptr. 2d 793, 804 (Cal. Ct. App. 1996) (holding that "interference with the market" theory of liability could not be employed to prove the tort, which "applies to interference with <u>existing</u> noncontractual relations which hold the promise of future economic advantage"); <u>cf.</u> <u>DurretteBradshaw, P.C. v. MRC Consulting, L.C.</u>, 670 S.E.2d 704, 707 (Va. 2009) (explaining that the commission of the tort of interference with an existing contract requires an "inten[t] to affect the contract of a specific person" (internal quotation marks omitted)). BNX's evidence was therefore insufficient on this claim as well.

## III.

Because we conclude that BNX failed to establish the elements of either of its claims, we vacate the bankruptcy court's judgment and remand for entry of judgment against BNX.

<u>VACATED AND REMANDED</u>